UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

GERALD GELDZAHLER,                          :

            Plaintiff,                  :

         -against-                          :

NEW YORK MEDICAL COLLEGE, et. al,            :

            Defendants.                 :

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

    09 Civ. 1791 (AJP)

    **OPINION AND ORDER**

**ANDREW J. PECK, United States Magistrate Judge:**

        Pro se plaintiff Dr. Gerald Geldzahler brings this action against New York Medical College ("NYMC"), Dr. Joseph Morales and Dr. Jay Phillip Goldsmith. (Dkt. No. 1: Compl.) While the complaint includes a detailed "Statement of Claim" fact section, it does not state any legal grounds for relief. (Compl. Ex.: Statement of Claim.) The Statement of Claim, however, repeatedly alleges that defendants' actions were "dangerous to the public." (Statement of Claim at 1-3.) Dr. Geldzahler's "Civil Cover Sheet" lists the "NY Whistleblower Statute" and "Common Law Claims" of "Bre[a]ch of Contract [and] Unlawful Termination & retaliation" as "cause[s] of action." (Dkt. No. 15: Geldzahler Opp. Aff. Ex. A: Civil Cover Sheet.)

        Presently before the Court is defendants' motion to dismiss the complaint pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure (Dkt. No. 9: Defs. Notice of Motion), on the ground that Dr. Geldzahler's breach of contract and wrongful termination claims are "barred by the doctrine of at-will employment" (Dkt. No. 11: Defs. Br. at 2-3). In a footnote, the defendants

also maintain that, to the extent that Geldzahler's complaint claims that defendants violated  New York's whistleblower statute, N.Y. Labor Law §§ 740 or 741, that claim cannot survive because Dr. Geldzahler only alleges that defendants "failed to adhere to education standards issued by CODA, a private accreditation body," but does not "allege a violation of law, rule or regulation." (Defs. Br. at 3 n.1.)

The parties have consented to decision of this case by a Magistrate Judge pursuant to 28 U.S.C. § 636(c).  (Dkt. No. 14.)

For the reasons set forth below, defendants' motion to dismiss (Dkt. No. 9) is GRANTED as to Dr. Geldzahler's breach of contract and wrongful discharge claims and DENIED as to his New York Labor Law §§ 740 and 741 claims.

## FACTS

The facts alleged in Dr. Geldzahler's complaint are assumed to be true for purposes of this motion, and will be set forth herein without use of the preamble " Dr. Geldzahler alleges."

In 2001, NYMC Chairman of Dental Medicine and Chief of Dental Service Dr. Joseph Morales offered Dr. Geldzahler a position as the director of the NYMC Oral and Maxillofacial ("OMS") Residency program (the "Program").  (Dkt. No. 1: Compl. Ex.: Statement of Claim at 1.)  The Program was in "dire need [of] a board certified, full-time program director" because the Program "was in jeopardy of losing accreditation" with the Council on Dental Accreditation ("CODA") of the American Dental Association ("ADA").  (Dkt. No. 15: Geldzahler Opp. Aff. at 2.) NYMC "promised" Dr. Geldzahler that "as a board certified Oral and Maxillofacial

surgeon, [he] would be the single responsible individual to direct the program, and [would be] given a 'free hand' to develop the goals and objective of this educational program." (Statement of Claim at 1; Geldzahler Opp. Aff. at 2.)

Geldzahler began as Director on June 1, 2001. (Statement of Claim at 1.)

The job entailed directing resident education, operating on patients as well as supervising residents who were operating on patients on a daily basis, lecturing, and administrative duties, which included supervising teaching staff, selecting residents, maintaining appropriate records and program statistics and assuring that the educational process met the standards of the Commission on Dental Accreditation (CODA) of the American Dental Association (ADA), the accrediting body for Oral and Maxillofacial Surgery Residency programs nationwide.

[His] responsibilities extended to residents who worked at three New York hospitals: the Westchester Medical Center in Valhalla, NY, and Metropolitan Hospital and St. Vincent's Catholic Medical Center in Manhattan.

(Statement of Claim at 1.) Although Dr. Geldzahler spent the majority of his time at Westchester Medical Center, he spent one-third of his time at NYMC. (Geldzahler Opp. Aff. at 2.)

"Soon after being hired," Dr. Geldzahler realized that the NYMC dentistry department was "focused on economic growth, and not on education." (Statement of Claim at 1; see Geldzahler Opp. Aff. Ex. I: Morales 12/16/04, 3/14/06 & 8/17/06 E-Mails.) For example, Dr. Morales forced the residents to "see more and more patients in the clinic, and to schedule a growing number of patients for the operating room and for general anesthesia, seeing that these cases paid much better than dental procedures performed under local anesthesia in a dental office setting." (Statement of Claim at 1.) Many of the patients operated on and given intravenous sedation and general anesthesia "would have done as well with simple local anesthetics in a dental office setting. . . . Often the

anesthesiologists would question the need for patients to undergo the risk of general anesthesia for a single tooth extraction.  This indeed posed a danger to the public, since many of these procedures, driven by Dr. Morales, were unnecessary."  (Geldzahler Opp. Aff. at 2-3, emphasis added.) Dr. Geldzahler informed Dr. Morales that these unnecessary procedures "were dangerous to the public," but Dr. Morales "argued that clinical decisions were being made that could justify these procedures."  (Geldzahler Opp. Aff. at 3, emphasis added.)

First year residents performed surgical procedures in the clinic without supervision by an OMS attending, "which posed a threat to patient safety," "as the oral surgery attending was stationed in the operating room with the senior residents as necessary by hospital regulations." (Statement of Claim at 2; Geldzahler Opp. Aff. at 3.)  "[J]unior residents worked under 'limited permits' issued by the New York State Dept. of Education.   Dr. Morales was aware of this, and desired that the residents obtain licenses as soon as possible to circumvent this need for supervision, which was mandated by New York State Education law." (Geldzahler Opp. Aff. at 3.) Additionally, residents were seeing too many patients to allow the attending surgeons to supervise properly; many residents "were forced to [work] privately in the clinic to increase production."  (Geldzahler Opp. Aff. at 4.)  One of the attending surgeons started cosigning charts with "DNSP," meaning that he "'did not see [the] patient.'"  (Geldzahler Opp. Aff. at 4.)  "Dr. Morales drove the attending staff to keep co-signing charts for billing purposes" and "started a program for electronic signatures for attendings." (Id.) Dr. Geldzahler received many complaints from "staff" worried about their liability from the unsupervised procedures.  (Id.)

Because first year residents were "stuck in the clinic," they did not get the opportunity to observe senior residents perform "advanced" surgeries in the operating room. (Statement of Claim at 1.) "These [first year] residents were being sent to St. Vincent's [Hospital] in their second year" where they had "on-call responsibilities for Oral and Maxillofacial Surgery" even though they had not "received the proper prior education or exposure to advanced procedures and patient assessment," which "again put the public in danger." (Statement of Claim at 2, emphasis added.)

On "multiple occasions," Dr. Geldzahler "pointed out" to Dr. Morales that the residents were not receiving a "proper educational experience." (Statement of Claim at 2; see also Geldzahler Opp. Aff. at 4.) Dr. Geldzahler notified Dr. Morales that the program was violating CODA standards that "institutional service was not to compromise resident education" and that only one "board-certified oral and maxillofacial surgeon [] was to act as program director and set the goals and objectives of the program." (Statement of Claim at 2.) Dr. Morales did not make any corrections, but instead "continued to use his position over [Dr. Geldzahler] to negate [Dr. Geldzahler's] attempts to correct the problems." (Id.)

In a meeting with Dr. Morales on October 26, 2006, Dr. Geldzahler realized that he was "just a figurehead, a full-time Program Director mandated by the CODA Standards of the ADA, but unable to really function as was mandated." (Geldzahler Opp. Aff. at 4.) Upon the advice of an NYMC administrator, Dr. Geldzahler asked Dr. Morales to "sit down with the [hospital] administration and undergo mediation regarding these problems," but Dr. Morales refused. (Statement of Claim at 2; see Geldzahler Opp. Aff. at 4.)

Dr. Geldzahler informed Dr. Morales that if Dr. Morales did not "resolve[] . . . these problems" by March 1, 2007, Dr. Geldzahler would make a "formal complaint to CODA." (Statement of Claim at 2; Geldzahler Opp. Aff. at 4.)  Dr. Geldzahler "decided to use the power of [his] position as mandated by the ADA and demanded that first year residents . . . go to the operating room and be appropriately taught and supervised."  (Geldzahler Opp. Aff. at 4-5.)

Two days before the "deadline," Dr. Morales told Dr. Geldzahler that he was "an employee at will" and gave Dr. Geldzahler the option of resigning or being terminated.  (Statement of Claim at 2; Geldzahler Opp. Aff. at 5.)  In March 2007, Dr. Geldzahler received a letter from Dr. Morales informing him of his termination effective April 1, 2007, which meant that Dr. Geldzahler no longer would receive a salary or benefits.  (Statement of Claim at 2; Geldzahler Opp. Aff. at 5.)

Dr. Geldzahler filed a complaint with CODA claiming that: (1) "[r]esident education was being compromised by institutional service" and (2) a "single, board certified Oral and Maxillofacial Surgeon was to set the educational goals and objectives of the program."  (Statement of Claim at 2; Geldzahler Opp. Aff. at 5 & Ex. K: Geldzahler CODA Compl.)[1]  CODA found Dr. Geldzahler's complaints valid and noted "[a]dditional violations."  (Statement of Claim at 2; Geldzahler Opp. Aff. at 5 & Ex. L: CODA Preliminary Draft Report.)  CODA also changed the Program's accreditation status from "accredited without reporting requirements to accredited with

---

[1]     Dr. Morales is not an Oral and Maxillofacial Surgeon.  (Geldzahler Opp. Aff. at 5.)

reporting requirements with intent to withdraw accreditation if corrections were not made to the program." (Statement of Claim at 2, emphasis omitted; Geldzahler Opp. Aff. at 5.)[2]

During the fall of 2008, Dr. Jay Goldsmith, the Program's new director, asked to "use [Dr. Geldzahler's] cases for a new accreditation site visit." (Geldzahler Opp. Aff. at 6 & Ex. N: Goldsmith 10/2/08 Email.) Dr. Geldzahler responded that his cases did not "comply with standards due to [his] minimal involvement with the program," and mandated that the Program disclose his minimal involvement if it chose to use his cases. (Geldzahler Opp. Aff. at 6 & Ex N: Geldzahler10/7/08 & 10/9/08 Emails.) The Program never made the "disclosure." (Geldzahler Opp. Aff. at 6.)

As a result, Dr. Geldzahler filed a third complaint with CODA in December 2008 alleging that the Program failed to disclose to CODA that it was "deficient in a major required category of surgery (Orthognathic Surgery)." (Statement of Claim at 2; Geldzahler Opp. Aff. at 6 & Ex. O: Gelzahler 12/12/08 3d CODA Compl.) CODA "moved" the Program into a "lower accreditation status." (Statement of Claim at 2; Geldzahler Opp. Aff. at 6.)

In January 2009, Dr. Geldzahler received a letter that NYMC was not "renewing [his] faculty appointment." (Statement of Claim at 3; Geldzahler Opp. Aff. at 6.) This was "highly irregular since [he] had continued to teach as a volunteer at no compensation, after being terminated,

---

[2]     Dr. Geldzahler filed another complaint with CODA because some of the "more vocal residents" who opposed his termination received "very poor evaluations . . . filed in a fraudulent manner" even though they had "stellar records." (Geldzahler Opp. Aff. at 5 & Ex. M: Geldzahler Second CODA Compl.) These "fraudulent" evaluations were "fortunately brought out into the open and corrected." (Geldzahler Opp. Aff. at 5.)

and still [was] Chief of Oral and Maxillofacial Surgery at the program's largest affiliated hospital, Westchester Medical Center." (Statement of Claim at 3; Geldzahler Opp. Aff. at 6.) Dr. Geldzahler was able to "sustain [himself] somewhat financially on revenues from private cases [he] generated and from on-call responsibilities." (Geldzahler Opp. Aff. at 6.) During this period, he performed more than two times the number of surgeries of any other surgeon in the department. (Geldzahler Opp. Aff. at 6.)

On February 9, 2009, Dr. Goldsmith emailed NYMC and Westchester Medical Center administrators requesting that they "remove Dr. Geldzahler from all schedules pertaining to supervision and teaching of all resident activities (including clinic, O.R., Amb Surgery, on-call, consults and any other resident-related activities)." (Geldzahler Opp. Aff. at 6 & Ex. Q: Goldsmith 2/9/09 E-Mail.) This "retaliatory action" had "drastic financial implications" for Dr. Geldzahler. (Statement of Claim at 3; Geldzahler Opp. Aff. at 6.)

**Geldzahler's Complaint**

Dr. Geldzahler's complaint includes a detailed "Statement of Claim" fact section, but does not state any legal grounds for relief. (Dkt. No. 1: Compl. Ex.: Statement of Claim.) The Statement of Claim, however, repeatedly alleges that NYMC's and the Program's actions were "dangerous to the public." (Statement of Claim at 1-3.) Dr. Geldzahler's "Civil Cover Sheet" lists the "NY Whistleblower Statute" and "Common Law Claims" of "Bre[a]ch of Contract [and] Unlawful Termination & retaliation" as his "cause[s] of action." (Dkt. No. 15: Geldzahler Opp. Aff. Ex. A: Civil Cover Sheet.)

**Defendants' Motion to Dismiss**

Defendants moved to dismiss the complaint pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure (Dkt. No. 9: Notice of Motion), on the ground that Geldzahler's breach of contract and wrongful termination claims are "barred by the doctrine of at-will employment." (Dkt. No. 11: Defs. Br. at 2-3). In a footnote, defendants also maintain that, to the extent that Geldzahler's complaint claims that defendants violated New York's whistleblower statute, N.Y. Labor Law §§ 740 or 741, that claim cannot survive because Geldzahler only alleged that defendants "failed to adhere to education standards issued by CODA, a private accreditation body," but did not allege a violation of "'law, rule or regulation' (or, in the case of § 741, 'a declaratory ruling adopted pursuant to law')." (Defs. Br. at 3 n.1.)

Defendants' reply brief further argued that Dr. Geldzahler's complaint should be dismissed because: (1) the complaint "does not refer to Labor Law §§ 740 & 741" and thus "does not provide the Defendants with the minimal fair notice of an alleged violation of Labor Law §§ 740 or 741 sufficient to satisfy the pleading requirements of [Fed. R. Civ. P.] Rule 8(a)(2)." (Dkt. No. 18: Defs. Reply Br. at 1); (2) the complaint fails to allege a violation of "law, rule or regulation" (Defs. Reply Br. at 3-5); and (3) the §§ 740 and 741 claims are barred by the statute of limitations (Defs. Reply Br. at 5 n.2).

## ANALYSIS

### I.    THE STANDARDS GOVERNING A MOTION TO DISMISS

#### A.    The Twombly-Iqbal "Plausibility" Standard

In two decisions in the last few years, the Supreme Court significantly clarified the

standard for a motion to dismiss, as follows:

> Under Federal Rule of Civil Procedure 8(a)(2), a pleading must contain a "short and plain statement of the claim showing that the pleader is entitled to relief."  As the Court held in Twombly, the pleading standard Rule 8 announces does not require "detailed factual allegations," but it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation. A pleading that offers "labels and conclusions" or "a formulaic recitation of the elements of a cause of action will not do."  Nor does a complaint suffice if it tenders "naked assertion[s]" devoid of "further factual enhancement."

> To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to "state a claim to relief that is plausible on its face."  A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.  The plausibility standard is not akin to a "probability requirement," but it asks for more than a sheer possibility that a defendant has acted unlawfully.  Where a complaint pleads facts that are "merely consistent with" a defendant's liability, it "stops short of the line between possibility and plausibility of 'entitlement to relief.'"

> Two working principles underlie our decision in Twombly.  First, the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions.  Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice.  Rule 8 marks a notable and generous departure from the hyper-technical, code-pleading regime of a prior era, but it does not unlock the doors of discovery for a plaintiff armed with nothing more than conclusions. Second, only a complaint that states a plausible claim for relief survives a motion to dismiss.  Determining whether a complaint states a plausible claim for relief will . . . be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense.  But where the well-

pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged - but it has not "show[n]" - "that the pleader is entitled to relief."  Fed. Rule Civ. Proc. 8(a)(2).

In keeping with these principles a court considering a motion to dismiss can choose to begin by identifying pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth.  While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations.  When there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief.

Ashcroft v. Iqbal, 129 S. Ct. 1937, 1949-50 (2009) (citations omitted & emphasis added) (quoting

Bell Atl. Corp. v. Twombly, 550 U.S. 544, 556-57, 570, 127 S. Ct. 1955, 1965-66, 1974 (2007)

(retiring the Conley v. Gibson, 355 U.S. 41, 45-46, 78 S. Ct. 99, 102 (1957), pleading standard that

required denying a Rule 12(b)(6) motion to dismiss "unless it appears beyond doubt that the plaintiff

can prove no set of facts in support of his claim which would entitle him to relief.")).[3]

## B.    Consideration Of Documents Attached To Or Referred To In The Complaint

A Rule 12(b)(6) motion to dismiss challenges only the face of the pleading.  Thus, in deciding such a motion to dismiss, "the Court must limit its analysis to the four corners of the complaint." Vassilatos v. Ceram Tech Int'l, Ltd., 92 Civ. 4574, 1993 WL 177780 at *5 (S.D.N.Y.

---

[3]    Accord, e.g., Harris v. Mills, 572 F.3d 66, 71-72 (2d Cir. 2009); Lindner v. Int'l Bus. Machs. Corp., 06 Civ. 4751, 2008 WL 2461934 at *3 (S.D.N.Y. June 18, 2008); Joseph v. Terrence Cardinal Cooke Health Care Ctr., 07 Civ. 9325, 2008 WL 892508 at *1 (S.D.N.Y. Apr. 2, 2008); Elektra Entm't Group, Inc. v. Barker, 551 F. Supp. 2d 234, 237 (S.D.N.Y. 2008); Edison Fund v. Cogent Inv. Strategies Fund, Ltd., 551 F. Supp. 2d 210, 216-17 (S.D.N.Y. 2008); Diana Allen Life Ins. Trust v. BP P.L.C., 06 Civ. 14209, 2008 WL 878190 at *3 (S.D.N.Y. Mar. 31, 2008).

May 19, 1993) (citing <u>Kopec</u> v. <u>Coughlin</u>, 922 F.2d 152, 154-55 (2d Cir. 1991)).[4/]   The Court, however, may consider documents attached to the complaint as an exhibit or incorporated in the complaint by reference.  <u>E.g.</u>, <u>ATSI Commc'ns, Inc.</u> v. <u>Shaar Fund, Ltd.</u>, 493 F.3d 87, 98 (2d Cir. 2002); <u>Chambers</u> v. <u>Time Warner, Inc.</u>, 282 F.3d 147, 153 (2d Cir. 2002) ("Because this standard has been misinterpreted on occasion, we reiterate here that a plaintiff's *reliance* on the terms and effect of a document in drafting the complaint is a necessary prerequisite to the court's consideration of the document on a dismissal motion; mere notice or possession is not enough."); <u>Rothman</u> v. <u>Gregor</u>, 220 F.3d 81, 88 (2d Cir. 2000) ("For purposes of a motion to dismiss, we have deemed a complaint to include any written instrument attached to it as an exhibit or any statements or documents incorporated in it by reference. . . .").[5/]

---

[4/]   <u>Accord</u>, <u>e.g.</u>, <u>Faulkner</u> v. <u>Beer</u>, 463 F.3d 130, 134 (2d Cir. 2006); <u>Aniero Concrete Co.</u> v. <u>N.Y.C. Constr. Auth.</u>, 94 Civ. 3506, 2000 WL 863208 at *31 (S.D.N.Y. June 27, 2000); <u>Six W. Retail Acquisition, Inc.</u> v. <u>Sony Theatre Mgmt. Corp.</u>, 97 Civ. 5499, 2000 WL 264295 at *12 (S.D.N.Y. Mar. 9, 2000) ("When reviewing the pleadings on a motion to dismiss pursuant to Rule 12(b)(6), a court looks only to the four corners of the complaint and evaluates the legal viability of the allegations contained therein.").

When additional materials are submitted to the Court for consideration with a 12(b)(6) motion, the Court must either exclude the additional materials and decide the motion based solely upon the complaint, or convert the motion to one for summary judgment under Fed. R. Civ. P. 56.  <u>See</u> Fed. R. Civ. P. 12(b); <u>Friedl</u> v. <u>City of N.Y.</u>, 210 F.3d 79, 83 (2d Cir. 2000); <u>Fonte</u> v. <u>Bd. of Managers of Cont'l Towers Condo.</u>, 848 F.2d 24, 25 (2d Cir. 1988).

[5/]   <u>See also</u>, <u>e.g.</u>, <u>Yak</u> v. <u>Bank Brussels Lambert</u>, 252 F.3d 127, 130 (2d Cir. 2001) (citing <u>Cortec Indus., Inc.</u> v. <u>Sum Holding L.P.</u>, 949 F.2d 42, 47 (2d Cir. 1991), <u>cert. denied</u>, 503 U.S. 960, 112 S. Ct. 1561 (1992)); <u>Paulemon</u> v. <u>Tobin</u>, 30 F.3d 307, 308-09 (2d Cir. 1994); <u>Brass</u> v. <u>Am. Film Techs., Inc.</u>, 987 F.2d 142, 150 (2d Cir. 1993).

"However, before materials outside the record may become the basis for a dismissal, several conditions must be met.  For example, even if a document is 'integral' to the complaint, it must be clear on the record that no dispute exists regarding the authenticity or accuracy of the document.  It must also be clear that there exists no material disputed issue of fact regarding the relevance of the document."  <u>Faulkner</u> v. <u>Beer</u>, 463 F.3d at 134 (citations omitted).

In this case, documents that plaintiff referred to in or attached to his complaint and attached to his opposition papers (Dkt. No. 15: Geldzahler Opp. Aff. Exs. A-Q), may be considered on the motion to dismiss, subject to the <u>Faulkner</u> v. <u>Beer</u> proviso, because they demonstrate further factual support for the allegations in the complaint.

\* \* \* \*

The Court's role in deciding a motion to dismiss "'is merely to assess the legal feasibility of the complaint, not to assay the weight of the evidence which might be offered in support thereof.'"  <u>Saunders</u> v. <u>Coughlin</u>, 92 Civ. 4289, 1994 WL 88108 at \*2 (S.D.N.Y. Mar. 15, 1994) (quoting <u>Geisler</u> v. <u>Petrocelli</u>, 616 F.2d 636, 639 (2d Cir. 1980)); <u>accord</u>, <u>e.g.</u>, <u>Watson</u> v. <u>McGinnis</u>, 964 F. Supp. 127, 130-31 (S.D.N.Y. 1997) (Kaplan, D.J. & Peck, M.J.).

Even after <u>Twombly</u> and <u>Iqbal</u>, when reviewing a pro se complaint, the Court must use less stringent standards than if the complaint had been drafted by counsel and must construe a pro se complaint liberally.  <u>See</u>, <u>e.g.</u>, <u>Harris</u> v. <u>Mills</u>, 572 F.3d 66, 72 (2d Cir. 2009); <u>LaBounty</u> v. <u>Adler</u>, 933 F.2d 121, 123 (2d Cir. 1991); <u>Watson</u> v. <u>McGinnis</u>, 964 F. Supp. at 131; <u>Saunders</u> v. <u>Coughlin</u>, 1994 WL 88108 at \*2 (citing <u>Hughes</u> v. <u>Rowe</u>, 449 U.S. 5, 101 S. Ct. 173 (1980)).

However, "[d]ismissal under Rule 12(b)(6) is proper if the complaint lacks an allegation regarding an element necessary to obtain relief. . . ."  2 Moore's Federal Practice § 12.34[4][a], at 12-72.7 (2005).  Thus, the "'duty to liberally construe a plaintiff's complaint [is not] the equivalent of a duty to re-write it.'"  Id., § 12.34[1][b], at 12-61; see also, e.g., Joyner v. Greiner, 195 F. Supp. 2d 500, 503 (S.D.N.Y. 2002) (action dismissed because pro se plaintiff "failed to allege facts tending to establish" that defendants violated his constitutional rights).

## II.   DR. GELDZAHLER'S BREACH OF CONTRACT AND WRONGFUL DISCHARGE CLAIMS ARE DISMISSED

Although Dr. Geldzahler's complaint does not specifically claim breach of contract or wrongful discharge, Dr. Geldzahler alleges that:

> Among other multiple promises and representations, [he] was promised that as a board certified Oral and Maxillofacial surgeon, [he] would be the single responsible individual to direct the program, and was given a "free hand" to develop the goals and objectives of this educational program.  It was based on these many promises and representations that [he] decided to close [his] NJ practice and accept the position with New York Medical College.

(Dkt. No. 1: Compl. Ex.: Statement of Claim at 1.)  The "Civil Cover Sheet" attached to the Complaint states that Geldzahler's "Common Law Claims" are "Bre[a]ch of Contract" and "Unlawful Termination & retaliation." (Dkt. No. 15: Geldzahler Opp. Aff. Ex. A: Civil Cover Sheet.)

Defendants argue that Dr. Geldzahler's breach of contract claim should be dismissed because he does not allege that his "termination involved a . . . . limitation in [an] individual employment contract."  (Dkt. No. 11: Defs. Br. at 3.)

"New York law is clear that absent 'a constitutionally impermissible purpose, a statutory proscription, or an <u>express limitation in the individual contract of employment</u>, an employer's right at any time to terminate an employment at will remains unimpaired.' Thus, either the employer or the employee generally may terminate the at-will employment for any reason, or for no reason." <u>Smalley</u> v. <u>Dreyfus Corp.</u>, 10 N.Y.3d 55, 58, 853 N.Y.S.2d 270, 272 (2008) (citation omitted, emphasis added); <u>see also</u>, <u>e.g.</u>, <u>Chimarev</u> v. <u>TD Waterhouse Investor Servs., Inc.</u>, 99 Fed. Appx. 259, 262 (2d Cir. 2004) (An at-will employee cannot sue an employer for breach of contract based on his termination, unless "an employee relies to his detriment on an employer's express written policy limiting its right of discharge."); <u>Marfia</u> v. <u>T.C. Ziraat Bankasi</u>, 147 F.3d 83, 87-88 (2d Cir. 1998) ("Under New York law, '[a]bsent an agreement establishing a fixed duration, an employment relationship is presumed to be a hiring at will, terminable at any time by either party.' . . . 'An employee may recover . . . by establishing that the employer made the employee aware of its express written policy limiting its right of discharge and that the employee detrimentally relied on that policy in accepting the employment.'"), <u>modified on other grounds by</u> <u>Baron</u> v. <u>Port Auth.</u>, 271 F.3d 81, 88 (2d Cir. 2001); <u>In re Gen. Media, Inc.</u>, 368 B.R. 334, 341 (Bankr. S.D.N.Y. 2007) ("Under New York law, she was an at-will employee, and has no claim for breach of contract based solely upon her termination."); <u>Douglas</u> v. <u>Victor Capital Group</u>, 21 F. Supp. 2d 379, 394 (S.D.N.Y. 1998) ("[S]ince [plaintiff] had no written or oral contract, he was an employee at will, and can have no breach of contract claim under New York law.") (Stein, D.J. & Peck, M.J.); <u>Sherman</u> v. <u>HarperCollins Publishers, Inc.</u>, 98 Civ. 2809, 1998 WL 437158 at *3-4 (S.D.N.Y. July 31, 1998)

(Peck, M.J.) (& cases cited therein); Barcellos v. Robbins, 50 A.D.3d 934, 935, 858 N.Y.S.2d 658, 659-60 (2d Dep't 2008) ("An employee who does not work under an agreement for a definite term of employment is an at-will employee who may be discharged at any time with or without cause.").

Even reading Dr. Geldzahler's complaint liberally, he does not allege any contract or "express written policy" limiting NYMC's right to terminate him. Thus, Geldzahler was an employee at will and can have no breach of contract claim under New York law. Accordingly, defendants' motion to dismiss Dr. Geldzahler's breach of contract claim is GRANTED.

To the extent that Dr. Geldzahler's complaint raises a wrongful discharge claim, "New York does not recognize a cause of action for the tort of abusive or wrongful discharge of an at-will employee." Barcellos v. Robbins, 50 A.D.3d at 935, 858 N.Y.S.2d at 660 (citing Lobosco v. N.Y. Tel. Co./ NYNEX, 96 N.Y.2d 312, 316, 727 N.Y.S.2d 383, 386 (2001), & Murphy v. Am. Home Prods. Corp., 58 N.Y.2d 293, 300-01, 461 N.Y.S.2d 232, 235 (1983) ("declin[ing plaintiff's] invitation" to recognize the tort of wrongful discharge)); see also, e.g., Baguer v. Spanish Broad. Sys., Inc., 04 Civ. 8393, 2007 WL 2780390 at *4 (S.D.N.Y. Sept. 20, 2007) ("[T]he New York Court of Appeals has unequivocally held that there is no independent cause of action in tort for wrongful discharge of an employee."); Shehab v. Chas. H. Sells, Inc., 04 Civ. 1534, 2006 WL 938715 at *6 (S.D.N.Y. Mar. 29, 2006) ("New York State does not recognize the tort of wrongful discharge."). Accordingly, defendants' motion to dismiss Dr. Geldzahler's wrongful discharge claim is GRANTED.

### III.    DR. GELDZAHLER'S CLAIM THAT DEFENDANTS VIOLATED NEW YORK LABOR LAW §§ 740 AND 741 SURVIVES

The pro se complaint, interpreted in light of the "Civil Cover Sheet" and Dr. Geldzahler's affidavit in opposition, appears to claim that defendants violated New York's whistleblower law, N.Y. Labor Law §§ 740 and 741, when NYMC terminated him as Program director, decided not to "renew [his] faculty appointment" and "remove[d him] from all schedules pertaining to supervision and teaching of all resident activities."  (See pages 7-8 above.)

Defendants argue that the complaint should be dismissed because the complaint "does not refer to Labor Law §§ 740 & 741" and thus "does not provide the Defendants with the minimal fair notice of an alleged violation of Labor Law §§ 740 or 741 sufficient to satisfy the pleading requirements of [Fed. R. Civ. P.] Rule 8(a)(2)."  (Dkt. No. 18: Defs. Reply Br. at 1.)  Defendants' argument is meritless.  "Under the liberal pleading principles established by Rule 8 of the Federal Rules of Civil Procedure, in ruling on a 12(b)(6) motion '[t]he failure in a complaint to cite a statute, or to cite the correct one, in no way affects the merits of a claim. Factual allegations alone are what matters."  Northrop v. Hoffman of Simsbury, Inc., 134 F.3d 41, 45-46 (2d Cir. 1997);  see also, e.g., Arar v. Ashcroft, 532 F.3d 157, 202 (2d Cir. 2008) ("It is well-settled in this Circuit that we may not affirm the dismissal of [a plaintiff's] complaint because [he has] proceeded under the wrong theory so long as [he has] alleged facts sufficient to support a meritorious legal claim.  In considering an appeal such as this one from a district court's grant of the defendants' Rule 12(b)(6) motion to dismiss, [f]actual allegations alone are what matter[ ].") (quotations & citations omitted); Wynder v. McMahon, 360 F.3d 73, 77 (2d Cir. 2004) ("Our case law makes clear that . . . [f]irst, federal

pleading is by statement of claim, not by legal theory.  Second, even leaving aside case law and other authorities, Rule 8's liberal pleading principles do not permit dismissal for failure in a complaint to cite a statute, or to cite the correct one . . . . Factual allegations alone are what matters.") (quotations & citations omitted); Hack v. President & Fellows of Yale Coll., 237 F.3d 81, 89 (2d Cir. 2000), cert. denied, 534 U.S. 888, 122 S. Ct. 201 (2001), abrogated on other grounds by Swierkewicz v. Sorema N.A., 534 U.S. 506, 122 S. Ct. 992 (2002); Flickinger v. Harold C. Brown & Co., 947 F.2d 595, 600 (2d Cir. 1991) (Defendant "point[s] out that [plaintiff] failed to plead the third party beneficiary theory in his complaint.  To this, we simply respond that federal pleading is by statement of claim, not by legal theory.").  Thus, Dr. Geldzahler's failure to specifically refer to Labor Law §§ 740 and 741 in his complaint is not a ground for dismissal.[6/]

Defendants also move to dismiss the § 740 claim because Dr. Geldzahler did not "commence this action" until February 25, 2009, "well after expiration of [§ 740's] one-year statute of limitations."  (Defs. Reply Br. at 5 n.2.)  New York Labor § 740(4)(a) sets the statute of limitations at one year from the time of the "retaliatory personnel action" in violation of § 740.  New York Labor Law § 740(1)(e) defines "retaliatory personnel action" as "the discharge, suspension or

---

[6/]     Notably, even though defendants claim that the complaint does not notify them of Dr. Geldzahler's §§ 740 and 741 claims, the complaint repeatedly uses §§ 740's and 741's "danger to the public health" language, and the "Civil Cover Sheet" states that the "NY Whistleblower Statute" is one of the complaint's "cause[s] of action."  (See page 1 above.)  Finally, defendants were sufficiently on notice of the claim that they addressed Labor Law §§ 740-41 in their motion to dismiss.  (See Dkt. No. 11: Defs. Br. at 3.)

demotion of an employee, or other adverse employment action taken against an employee in the terms and conditions of employment."

Defendants use April 1, 2007, the date NYMC terminated Dr. Geldzahler as program director, as the trigger date for the one-year statute of limitation.   (Defs. Reply Br. at 5 n.2.) However, in January 2009, NYMC decided not to "renew[ ][Dr. Geldzahler's] faculty appointment" and in February 2009 NYMC "remove[d] Dr. Geldzahler from all activity schedules pertaining to supervision and teaching of all resident activities." (<u>See</u> pages 7-8 above.) These actions, which had "drastic financial implications" for Dr. Geldzahler (<u>see</u> page 8 above) and which occurred within one year prior to commencement of this action, constitute adverse employment actions because they significantly changed the "terms and conditions of employment."  New York Labor § 740(1)(e); <u>see</u>, <u>e.g.</u>, <u>Dobson</u> v. <u>Loos</u>, 277 A.D.2d 1013, 1013, 716 N.Y.S.2d 220, 221 (4th Dep't 2000) (defendants' actions to preclude sergeant's appointment as lieutenant during life of preferred eligibility list fell within statutory definition of "retaliatory personnel action" under whistleblower statutes.). Therefore, the Court rejects defendants' argument that Dr. Geldzahler's Labor Law § 740 claim is totally barred by the one year statute of limitations.

Turning to the merits, Dr. Geldzahler has sufficiently alleged that defendants violated §§ 740 and 741.  New York Labor Law § 740(2) states that:

> An employer shall not take any retaliatory personnel action against an employee because such employee . . . (a) discloses, or threatens to disclose to a supervisor or to a public body an activity, policy or practice of the employer that is in violation of law, rule or regulation which violation creates and presents a substantial and specific danger to the public health or safety, or which constitutes health care fraud; . . . .

Labor Law § 741(2) states that:

> Notwithstanding any other provision of law, no employer shall take retaliatory action against any employee because the employee . . . . :  (a) discloses or threatens to disclose to a supervisor, or to a public body an activity, policy or practice of the employer or agent that the employee, in good faith, reasonably believes constitutes improper quality of patient care; . . . .

Labor Law § 741(1)(d) defines "[i]mproper quality of patient care" as

> any practice, procedure, action or failure to act of an employer which violates any law, rule, regulation or declaratory ruling adopted pursuant to law, where such violation relates to matters which may present a substantial and specific danger to public health or safety or a significant threat to the health of a specific patient.

Defendants argue that Dr. Geldzahler's allegations are deficient because he fails to allege a violation "law, rule or regulation" (and in the case of  § 741 a "declaratory ruling adopted pursuant to law").  (See page 9 above.)  Defendants maintain that Dr. Geldzahler's allegation that defendants violated CODA does not suffice because CODA is not a law, rule, regulation or "declaratory ruling adopted pursuant to law."  (See page 9 above.)  Dr. Geldzahler responds that the New York State Department of Education Office of the Professions' "Regulations of the Commissioner" incorporates CODA's standards because it charges CODA with accrediting dental facilities and hospitals.  (See Dkt. No. 15: Geldzahler Opp. Aff. at 1-2 & Ex. G: N.Y. State Dep't of Educ. Office of the Professions' "Regulations of the Commissioner" § 61.13 (a "hospital or dental facility approved by an appropriate agency as used in subdivision (1) of section 6605 of the Education Law shall mean an institution accredited for teaching purposes by the Commission on Dental Accreditation of the American Dental Association." ) & Ex. C: N.Y. State Dep't of Educ. Office of the Professions' "Regulations of the Commissioner" § 61.18 (stating that CODA is an

"[a]cceptable national accrediting body" and requiring a dental "residency program" to be "accredited" by a "national accrediting body").)   Although this Court has found no case law interpreting the meaning of "law, rule, regulation or declaratory ruling adopted pursuant to law," Dr. Geldzahler's argument is reasonable:  By charging CODA with accrediting hospitals and dental facilities, the "Regulations of the Commissioner" incorporate the CODA standards by requiring hospitals and dental facilities to adhere to CODA standards in order to be accredited.

Even if the "Regulations of the Commissioner" do not incorporate CODA standards, Dr. Geldzahler's § 741 claim nevertheless survives because he "in good faith, reasonably believe[d]" that CODA was a "law, rule, regulation or declaratory ruling adopted pursuant to law."  Labor Law § 741(2).  The "Justification" section of § 741's Bill Jacket, 2002 A.B. 9454, ch. 24, quoted by the New York Court of Appeals in Reddington v. Staten Island Univ. Hosp., 11 N.Y.3d 80, 91-92, 862 N.Y.S.2d 842, 850 (2008), to support its "plain-text" interpretation of § 741, states that

> [Section 741] does not specifically mention adherence to acceptable standards of professional practice or a code of ethics. The bill does allow a professional to go to court to be made whole after retaliatory action when the professional reasonably believes that a state law, rule or regulation has been violated. It is expected that a professional would reasonably believe that a practice identified in their professional standard or ethic as best practice or prohibited practice would be reflected in the determinations of the state agencies that regulate professional practice.

The New York Court of Appeals concluded that "[t]his legislative history indicates that the specialized protections of Labor Law § 741 were meant to protect professional judgments regarding the quality of patient care . . . . [S]ection 741, which offers exceptional and specialized whistleblower protection over and above the generalized protection afforded by section 740, is meant to

safeguard . . . those employees who are qualified by virtue of training and/or experience to make knowledgeable judgments as to the quality of patient care, and whose jobs require them to make these judgments." Reddington v. Staten Island Univ. Hosp., 11 N.Y. 3d at 92-93, 862 N.Y.S. 2d at 850.

Moreover, in his opposition affidavit, Dr. Geldzahler argues that CODA standards "has been named an instrument of the law by New York States Regulations and Education Law." (Geldzahler Opp. Aff. at 1-2. )  Dr. Geldzahler's reasonable belief that CODA is a "state law, rule or regulation" is sufficient to satisfy § 741.  Although a "reasonable belief" that CODA is a "state law, rule or regulation" likely is not sufficient to satisfy § 740,[7] discovery related to Dr. Geldzahler's §§ 740 and 741 claims will be the same.   Accordingly, defendants' motion to dismiss Dr. Geldzahler's N.Y. Labor Law §§ 740 and 741 claims is DENIED.

---

[7]    See Bordell v. Gen. Elec. Co., 88 N.Y.2d 869, 871, 644 N.Y.S.2d 912, 913 (1996) ("Here, there were allegations that plaintiff had a reasonable belief of a possible violation, . . . but no proof of an actual violation. Thus, plaintiff's Labor Law § 740 claims are untenable and were properly dismissed."); Deshpande v. TJH Med. Servs., P.C., 52 A.D.3d 648, 650, 861 N.Y.S.2d 697, 699 (2d Dep't 2008) ("Labor Law § 740 requires a plaintiff to allege an actual violation of a law, rule, or regulation. A good faith, reasonable belief that a violation occurred is insufficient."); Nadkarni v. N. Shore-Long Island Jewish Health Sys., 21 A.D.3d 354, 355, 799 N.Y.S.2d 574, 575 (2d Dep't 2005) ("Contrary to the plaintiff's contention, Labor Law § 740 requires a plaintiff to allege an actual violation of a law, rule, or regulation. An employee's good faith, reasonable belief that a violation occurred is insufficient.").

23

## CONCLUSION

For the reasons stated above, the defendants' motion to dismiss (Dkt. No. 9) is

GRANTED as to the breach of contract and wrongful discharge claims and DENIED as to the New

York Labor Law §§ 740 and 741 claims.[8/]   The Court will issue a separate scheduling order.

SO ORDERED.


Dated:          New York, New York
                October 19, 2009


                                        Andrew J. Peck
                                        United States Magistrate Judge

Copies to:      Dr. Gerald Geldzahler (Regular & Certified Mail)
                Christopher Collins, Esq.
                Lisa M. Harris, Esq.

---

[8/]     If the pro se plaintiff requires copies of any of the cases reported only in Westlaw, plaintiff
         should request copies from defense counsel.  See Lebron v. Sanders, 557 F.3d 76, 79 (2d Cir.
         2009); SDNY-EDNY Local Civil Rule 7.1(c)

H:\OPIN\GELDZAHLER